Good morning. I'm going to try to use this as an exhibit if I can. Works better if you just hand up 8 and a half by 11 for future records. All right. Good morning, Your Honors. I represent the appellant in cross appellate, Susan Brown-Thill. And the primary issue and the sole issue raised in Susan Brown-Thill's appeal from the district court's judgments in both of these cases is whether the district court erred in denying Ms. Brown-Thill's request for attorney's fees pursuant to paragraph E of the party's arbitration agreement which was executed in March of 2010. And in particular, it is Brown-Thill's position that the district court did err in denying her request for attorney's fees because under the contractual provision for attorney's fees, Brown-Thill was entitled to recover attorney's fees because Mr. Richard Brown in the district court proceeding did pursue a claim dispute or controversy against Ms. Brown-Thill that was a proceeding other than the arbitration that was provided for in the party's agreement. And in particular, in the district court proceeding- So your position is if the arbitration loser opposes the confirmation petition, you get fees? That's correct, Judge Loken. That just doesn't pass my chuckle test, frankly. I mean, if the agreement contemplates judicial confirmation of an award, the Federal Arbitration Act contemplates an attempt to defeat confirmation. Well, that's correct. But if a party comes in and opposes the enforcement of the arbitration award under- This is a contractual provision. It's an attorney's fee provision that's to be interpreted like any other attorney's fee provision. Of course, it's confirmation. The petition to confirm under, what is it, Section 9 of the Federal Arbitration Act. That's correct. But there's nothing in the plain- Let's put other language in it. Let's use Arbitration Act language, because that's the governing statute. That's correct. But there's nothing in the statute that says that the parties are precluded from contracting in the event that there's a claim, dispute, or controversy. I agree. I'm just saying your plain language argument doesn't fly. Well- The other than arbitration means other than opposing the confirmation of the award. To me. Well, there's no language to that effect. I mean, essentially what that is doing- No, but your argument is it's plain language. You can't lose. It's unambiguous. It is. The Arbitration Act makes it, if anything, your position less likely than the other. Let me give you an example on what you have up there, which would be contrary to law. It says the responding party shall be entitled to dismissal or injunctive relief. In other words, if you oppose confirmation and you file some opposition under this provision, you'd say that the court would immediately dismiss the opposition and award attorney's fees. And that can't be right. It can't be under law. They have a right to challenge confirmation. How do you explain the language about saying that they're entitled to a dismissal or injunctive relief? Well, I think in essence, Judge Riley, what we're talking about here is that if you come in and you- I mean, clearly when Mr. Brown sought to vacate the arbitration award in one of these proceedings and the other was a proceeding in which Ms. Brown still sought confirmation. And the parties had a contractual agreement. And that says that if you pursue a claim, dispute, or controversy against the other in a proceeding other than the arbitration, and clearly that's what the district court proceeding was- No, clearly it was not. That's the whole point. Well, they- I mean, like most lawyers, you attach the word clearly when you're on thin ice. The law assumes that you have to implement the award. You can't just have an arbitration award. It allows somebody to implement it, which means go to a court and have it confirmed. And your reading of this is you could never implement it. At least you couldn't go to court to implement it. Well, you can- I mean, certainly our position is that if there is- a party would have a right to go in and seek confirmation of the award. That's what Ms. Brown-Thill did. If there had been an unopposed, no opposition to the confirmation, then certainly Ms. Brown-Thill would not have been entitled to attorney's fees. Because at that point, there's no claim, dispute, or controversy under the language of this agreement. But there's no provision in the Federal Arbitration Act that says that the parties are precluded from allocating attorney's fees simply because there's a confirmation proceeding. And our position is, Mr. Brown, throughout this proceeding, he was involved in a dispute or controversy and claim against Brown-Thill that the arbitration award in several different respects was not valid. It was not enforceable, which caused a significant briefing process in the district court. Only because you couldn't persuade the district court that all these issues were for the arbitrator, in which case you could have ignored 95% of the 1,200 pages. Well, there was an extensive summary judgment proceeding, Judge Loken. That's correct. But ultimately, the district- In my view, a highly dubious conclusion, but one you don't even challenge in this court. Well, we sought ultimately what Brown-Thill sought in the district court was confirmation of both these arbitration awards. The one that was entered on March 14, 2011. I'm talking about your briefing about all the money, all the attorney's fees that were generated because of the extraneous issues that Brown raised in the confirmation proceeding. That's correct. Okay. But the district court wasn't persuaded they were extraneous. In applying first options versus Kaplan, it had to decide what's for the court and what's for the arbitrator. And when it decided certain things were for the court, that exponentially multiplied the pleadings, the filings, the attorney's fees. It did. It was still part of the confirmation process. It was part of the confirmation process. So, you know, you lost the issue that would have saved the fees, most of them. Well, we went through a summer judgment process in the district court as part of the process to obtain an adjudication as to whether the arbitration awards should be confirmed. But if the issue of whether the arbitrator had the power to remove a trustee in a case of paralysis because there's an even number of trustees and they're stillmen. Right. If that was an issue for the arbitrator, the summary judgment proceedings would have been very different. And the size of the pleadings would have gone from here to here. Well, ultimately, the district court asked the parties. That's the point I'm making. Yeah, I think ultimately the district court permitted the parties to raise their arguments both in favor of confirmation of the arbitration awards and Brown's arguments against confirmation of the arbitration awards. And allowed the summary judgment proceeding as the vehicle to make a determination as to whether the two arbitration awards. And did you ask for a threshold ruling on what's for the arbitrator and what's for the court? We did not, Your Honor. We briefed everything through the summary judgment. All the 1,200 pages on each side came in. And then what should have been the threshold question was finally decided. Yes. And in many instances, the district court concluded that the arbitrator did have the right, for example, on procedural arbitrability to determine the proper procedures for the arbitration. But the core issue was the removal issue, right? In the second proceeding involving the December 5, 2011. Yeah, the one that the appeal we're talking about. Well, there's two consolidated issues. Well, I know. But the one where you're 1710, I guess it is. Yes. Wherever, you know. Right. That was the core issue. That's correct. Right. But in connection with that, there was all kinds of disputes and controversies between Brown and Brownville. Well, if that core issue is for the arbitrator and not for the court, the summary judgment proceedings become far less complex. Well, perhaps. But nevertheless, Brown was permitted to make those arguments in that proceeding, and Brownville had to respond to them. Well, all of these pages and pages about Florida and Missouri trust law, I mean, if that issue is in the first instance for the arbitrator, it's a completely different set of arguments. Well, it may be. What I venture to say is substantially reduced attorneys fees in the lawsuit. Well, I think, Judge Loken, we were in a position where arguments were raised by our opponent, and Brownville responded to those arguments. You know, Brownville sought confirmation of both awards in accordance with the Federal Arbitration Act. I know that. I'm responding to your, you know, this is, we should win because it's so dreadfully all the way they got up the attorneys fees by raising issues other than, you know, core confirmation. Well, they did it in the context of saying the arbitrator didn't have the power to do that. Well, they clearly raised- That's a confirmation issue. Yes, they raised objections to the confirmation of the award. Go ahead. I mean- And so, you know, there's nothing in, if you look at paragraph E that says, well, it has to be a dispute, claim, or controversy that is other than in a confirmation or attempt to vacate an arbitration award. Otherwise, I mean, you know, the basic fundamentals here are that the attorneys fees were incurred in opposing arguments that were raised by Brown that attacked the authority of the arbitrator. And that's the reason that Brownville, under the plain language of this paragraph 3, believes she's entitled to attorneys fees. Do you have any case law or any law of any kind that says that the confirmation process is not part of the arbitration, your language is other than the arbitration provided? Do you have any law that says the confirmation in federal court is not part of the arbitration process? I don't think that we've cited any specific case law on that, Judge Riley. I mean, clearly, the arbitration process and the district court proceeding, in our view, are two different proceedings. I mean, the district court proceeding is a court proceeding. And the arbitration hearing in front of Arbitrator McCloud was an arbitration proceeding. And I don't think there's any suggestion, you know, in the language of this arbitration agreement that when they're referring to arbitration, they're referring to a court proceeding in which an arbitration award is sought to be confirmed. Okay, your time is about up, but do you want to talk about the removal of the trustee at all? Or are we just going to talk about attorneys fees? Well, I mean, clearly, our position is that, you know, the arbitration agreement was a broad-based agreement. The issues were raised. The issue of Mr. Brown's removal was a dispute that existed between Brown and Brown-Thill. And that was properly presented to Arbitrator McCloud. And there was a hearing on it that was held on December 5, 2011, in which, on behalf of Brown-Thill, we presented witnesses and exhibits in support of our position. And the arbitrator issued an award with respect to the removal. I'm not sure what other questions the court may have with respect to that. Okay, well, then let's hear from Mr. Lorre. All right. Thank you. Good morning, Your Honor. Good morning, Mr. Lorre. And may it please the court, we're going to rest on our briefs, I think, for the most part on this attorneys fees issue. It's an interpretive issue. The law is clear. And we don't think much more needs to be said about it. So I'd like to address the other issues that are raised by Brown 1 and Brown 2. And in Brown 2, there were three arbitrability arguments, arguments that the arbitrator didn't have the power to render the award that he did. And in Brown 1, we have Section 10A4 excess of power arguments that are, you know, they're not pure arbitrability arguments. It's what the standard of review of a decision by an arbitrator that we think conflicted with the clear terms of the trust agreement or the clear terms of the arbitration agreement. In terms of the arbitration agreement, we have the whole process, the noncompliance with the provisions that concern the submission of disputes to the arbitrator. And let me say right off the bat that we have never disputed that the issue of who gets to decide that issue is clearly for the arbitrators. What issue? The issue of whether the condition precedence to submitting a dispute to arbitration has been met. Are you talking about the procedural issues for the March ruling or are we up to December? This is the March ruling, Your Honor. Okay. Yeah, so those are for the arbitrator to decide. But the district court erred here because having made that determination, which was a correct determination, it then assumed that there was nothing that there was no review available at all. Of course, there is under the essence of the agreement standard. This is not just like a discovery dispute or something. This issue directly bears on whether the dispute itself was submitted to arbitration. And in that dispute, that is a dispute of arbitrability. Whether or not the provisions were complied with, yes, that was for the arbitrator. And we raised that issue before the arbitrator. Mr. Lehner raised it on March 7th. And nothing was ever said about it. Now, the district court, as I said, it erroneously concluded that we believe that there was no review available at all. But then it went a little farther and said that, well, there was basically, I don't know, I forgot what the words were, substantial compliance or something to that effect with the terms. Are you talking about the merits now or the procedure? This is the procedure leading up- Identify it. Yes. Okay. I apologize, Judge Loca, but this is Brown 1 and this is- Just tell me the issue. Yeah. The issue is whether the award should be vacated because the preconditions to submission of a dispute to arbitration were not complied with. What preconditions? The preconditions were there is a seven-day cooling-off period. There was a requirement for mediation. So now you're conceding that PROTEC applied. This was not Stoltz-Nielsen. And what are you saying that the district court then failed to do? What the district court failed-actually, we've always conceded that PROTEC applied. And PROTEC's a great case because PROTEC, it said- Just answer the question. What did the district court do wrong? What the district court did wrong was it concluded that it could not review the arbitrator's apparent rejection of the argument. Well, but it did. I mean, it said that. But then, in a footnote, it did review it and came to the same conclusion as the arbitrator and said, in the alternative, all that is- You know, so you're arguing an uphill battle because if we send it back, the district court is just going to say, well, look at my footnote. I've already said that. We're back at the same place. And that is correct, Your Honor. There was the footnote there. And as we pointed out in our briefs- I mean, so you don't win either way. Well, we don't think that that interpretation is a reasonable interpretation of- Well, yeah, now you're arguing against the arbiter and the district court. Yeah. But they're both wrong. We're going to move on to the issue of whether the Brown 1 award should have been vacated because the arbitrator second-guessed Mr. Brown's broad discretionary authority that he had- Isn't this the one you called Brown 2 about three minutes ago? Well, it's Brown 1. I did refer to Brown 2, but that was in a different context. But this is, again, Brown 1. Brown 1 is the later ruling. Brown 1 is the first ruling, Your Honor. It's the March 2011 ruling. That's the one with the procedural issues. I thought we were moving to the substantive issues in December. No, these are substantive issues that relate to Brown 1. Brown 1 is not just procedure. You know we rely on the Boise cascade. You know we've granted re-hearing and bank in a case primarily, I suspect, to consider whether Boise should be explicitly overruled as inconsistent with later Supreme Court cases. When you're talking about the review of the substantive award, you better be very clear about what you're- Absolutely, Your Honor. And in terms of that, in terms of the Boise cascade, we may have cited Boise, but we've cited a lot of other cases. We didn't rely on the same kind of- It's one of a series of three or four. Yes. As to which are in substantial doubt. Right, and because of Oxford. But Oxford- Because of our decisions as well. Okay. And I would- in terms of your decisions, the RACO granting- For example, the manifest disregard older Eighth Circuit cases. Yeah. If you're arguing manifest- the arbitrator was manifestly disregarded the arbitration award, you are on very thin ice. What I'm- what we're arguing is that the arbitrator manifestly disregarded the trust agreement, not the law. That's what the manifest disregard doctrine is. The Supreme Court decision in Oxford and Stolt-Nielsen make it quite clear, I think, that that is a viable ground for review under the FAA, under Section 10A4. And that's- that has been the law of this circuit for quite some time. It was recently expressed in RACO granting. It was recently- That's the one- And that's the case. And then there was- A re-hearing in bank has been granted. Okay. And then there was the Elkhorn case, too, before that, where the court rejected the manifest disregard of the contract argument on the facts. There was a reasonable interpretation, so the award stood. But that case, sir, that case supports the existence of this standard, which I think you will find under Stolt-Nielsen. If you read Oxford, the Oxford case very clearly says- All right. Commercial arbitration applies. Just to accept that it's in doubt, then go ahead. I understand. That's correct, Your Honor. There are- I would say- So what do we have? Yes. What do we have? What's the- what is the- I think if anything survives, it won't be manifest disregard. It would be disregard of an unambiguous- That's exactly- Contractual provision. So tell us- Right. And so the unambiguous contractual provisions that we're dealing with in Brown 1, the March award, are the grants of discretion, the very broad grants of discretion that are contained in the trust agreement. We outlined these in quite some detail in our briefs. And they make it clear that an arbitrator, just because two parties may have agreed to a broad arbitration clause, that doesn't mean that the two parties don't agree on something about which they both have discretion, that the arbitrator settles that agreement in a way that basically negates, in this case, Mr. Brown's discretion that he got from the trust agreement. Now, the thing about trust agreements versus commercial contracts, too, is that when we're dealing with trust agreements, we're also dealing with the state law on trust. And we're dealing with the nonjudicial- The arbitrator is. Well, it's two things. It goes to authority. The arbitrator is, but the arbitrator also doesn't deal with the issue of what power did the parties have to delegate to the arbitrator to make a certain decision. Now, the two parties here did not have the power to amend the trust agreement, Your Honor. And we briefed that, and that's under both Florida and Missouri law. So if the parties didn't have that power, if they couldn't basically agree that, well, we'll take the discretion provisions out of the trust agreement and we can have an arbitrator come in and make the decision for us in the event of a tie, then, yeah, then they could delegate that to the arbitrator, but they can't do that. And even in the commercial context, you know, whereas two parties can always amend a contract, the presumption under, I think, Oxford and Stolt-Nielsen, was that- Now, the arbitration, the agreement to arbitrate was after the trust, indeed, after both parents had died, so- That's correct, Your Honor. It became irrevocable, yes. So it was the co-trustees of a complex trust agreement, which has now an even number of controlling principles. So stalemate and paralysis are obviously on the horizon. Now, if that had happened without the agreement to arbitrate, what would have happened? Oh, the trust agreement provides a very clear solution. It allows the two trustees to appoint a third co-trustee. And I have to say that had the two parties been able to agree to appoint a corporate trustee in the situation that I- Okay, but that's part of the stalemate. I'm sorry, Your Honor? That's part of the stalemate. That's part of the paralysis. They can't agree to do anything. Well, that's not in the- Not what happens under state law if there's no arbitration agreement. They go to court, and the court invokes these special powers to deal with a stalemate that is threatening the life of the trust or its corpus, right? If the court- Yes, Your Honor. Well, of course it would. But there are stalemates that result in the ongoing Korean War. At some point, the court has the power to save the trust, right? Yes, it would have the power. And probably, Your Honor, it would be by removing those trustees. Then why don't the parties have the power to agree to replace the court with an arbitrator? Because the trust law does not- It gives the court that power, but not the parties, Your Honor. The parties' power is as fiduciaries. You just told me- One of your points is that the trust law doesn't preclude the parties from agreeing to do a lot of things. My point was that the trust law does preclude because of the nonjudicial settlement agreement provisions. It does preclude parties from privately agreeing to certain things unless certain conditions are met. Like all interested parties, for example, are part of the agreement and there's no derogation of the law. They didn't enter into an agreement to arbitrate. They entered into a- That effectively substituted an arbitrator for a probate judge. No, but Your Honor, that's the problem. With the nonjudicial settlement agreement, they can do that with respect, as I said, with respect to a lot of disputes, but they can't modify a trust. That's what it says. Counsel, they weren't settling anything in March 2010. They were dealing with the possibility that there might be a stalemate that could jeopardize the trust and its assets. Well, I don't think that the record would support that, Your Honor. They were unsuccessfully attempting to find a cheaper way out of that crisis should it ever develop. They, in fact, found probably the most expensive way. Your Honor, the arbitration agreement, because of the trust law, they could not resolve that agreement by changing the terms of the trust. So the arbitrator did not have the authority to make that decision. Now, along the same, you know, as long as we're talking about the nonjudicial settlement agreement provisions, I want to address the Brown 2. I have two questions. Sure, Your Honor. One of your arguments is that the arbitrator didn't have power or authority to sign the documents. And you may be right about that, but what is it that you're asking to be done? Because the agreement clearly says that the award operates as authority. They could just take it to a third party and say, here's what it is. Is that what you're saying? You say, well, that sentence should be deleted from the award? I mean, or the signature should be deleted and all you use is the award conclusion? Well, Your Honor, that, at a minimum, I think that that provision should be deleted, yes. Because to confirm something like that suggests that the arbitrator had this remedial authority that the parties clearly did not or did not strike clearly. Well, my point is the result is the same. I mean, you're just saying, well, the arbitrator can't sign the documents, but the party brownfield can go in and just hand the award to somebody and you end up with the same result. Are you saying that there's anything different than that? Well, it's a little different because I think maybe we're putting, I mean, nobody disputes that the parties can hand the award to somebody, but whether or not they rely on it is a different issue. I mean, this is the agreement between two parties. Well, sure, and they may not rely on their arbitrator's signature either. That's right. And ultimately you're going to have to go to court and back to court again. Mm-hmm. But the result, somehow you have to enforce the award. And all I'm trying to find out is what difference do you think that it is other than the arbiter signs it versus just handing somebody the award? I think there's a big difference because by suggesting that the arbitrator can act in Mr. Brown's stead and sign documents,  I'm saying the arbiter can't do that. Okay. So now where are we? Well, that provision would have to be excised, Your Honor, and we think the arrest of the award has to be vacated. That sentence comes out. Okay, so now where are we? Well, we have the other arguments in terms of the abuse of the ‑‑ I know that. I'm just talking about enforcing the award. Well, I mean, for that one issue ‑‑ Because the arbiter can't sign the documents, so instead of signing, you take it in and say I have this award that says I win. I mean, the other side says that. So how does that change anything here? I think it changes things to the extent ‑‑ I mean, as long as it is clear that the arbitrator didn't have that authority, I think that the wrong that was done with respect to this issue is addressed. So whether that's from an excising the sentence or an opinion that would say it's not something that the arbitrator has the authority to do, that's his concern. I don't know advisory opinions. Well, this is ‑‑ but, Your Honor, if you were to just leave that in and put a judgment on it, then that's going to be an invitation to this arbitrator or perhaps others to exceed their authority. Because then it has a judicial ‑‑ But I'm conceding that to you. I'm saying if we say the arbitrator doesn't have the authority to sign the documents, period, take that sentence out of the award, where are you? I'm assuming everything else remains the same. Yeah, I mean, if the court were to reject all of our other arguments, then we would ‑‑ at least we would not have that cloud of, you know, that suggestion that the arbitrator had the authority to go sign documents in Mr. Brown's name. That's what we would get out of that, Your Honor. Because he did try to do that, so it's not really ‑‑ it's not a hypothetical question. I mean, this happened. No, I understand. In Brown 2, you raised the argument that Brown's children were necessary parties to the arbitration. But you didn't raise that until much later. Why are you raising it now? You didn't raise it in Brown 1 or any ‑‑ some of these other things. Why all of a sudden? I mean, there's obviously a waiver issue, but is there some reason why all of a sudden this comes up? The reason is, is because the Brown 1 dispute is, you know, did not implicate the trust corpus to the same extent as a change of management, a change of title to the assets that was affected by the resignation and removal. I thought Brown 1 was a dispute over hard dollars, like $2 million worth. The transfer of hard dollars, yes, Your Honor, but not ‑‑ I mean, at first blush, not being a trust lawyer or otherwise involved, it would seem to me Brown 1 has a more direct impact on the beneficiaries than Brown 2. Well, I think ‑‑ As the district court says, you get new trustees, and if the beneficiaries think they're doing wrong, they challenge it. Yeah, the thing with Brown 2, though, is that the court's subject matter jurisdiction was based on the importance of the change of management over the trust assets. And if you look ‑‑ and we're not talking just about interested parties, necessary parties, we're talking about interested parties. I mean, they're clearly ‑‑ Brown's children did not agree to arbitrate. Brown's children, you know, now, if we were to accept the, you know, virtual representation arguments or whatever, they're basically being deemed to be parties to this arbitration agreement. Brown himself did not agree to arbitrate removal disputes because if he had agreed, he would have joined ‑‑ Well, you have an opinion from the district court, as Judge Loken says. It says that they can come back and challenge it, which probably becomes the law of the case. But, Your Honor, that would be ‑‑ But your time's expired. I'm sorry, Your Honor. Thank you. Thank you. How much time is Mr. Barton here? Five and a half minutes, Your Honor. Okay. Mr. Barton? Just one ‑‑ I want to follow up on Judge Riley's question about the effect of this last sentence in the March 14, 2011 arbitration award. I mean, our position is it really wouldn't, you know, if you remove that sentence from the award in order, I mean, that's not going to change the substance of where we're at today. The arbitration award of March 14, 2011 was ultimately confirmed. And, you know, the substance of that award is that ‑‑ Well, my question more is if that sentence is stricken, can you still ‑‑ and everything else remains the same, can you function with that award? Yes. I mean, both parties, not just yours. Yes. And, in fact, Judge Riley, what really happened here was that, you know, when this award was entered, none of these distributions were made until after the arbitration award was confirmed by the district court. So the arbitration award was not, you know, enforced or acted upon until after the district court confirmed the arbitration award. And certainly the, you know, once the arbitration award was confirmed, even without the last sentence, I mean, it's effective to permit those transfers. That's what the order says. And if you deleted that last sentence, it wouldn't make any difference in terms of the substance of the judgment that the district court entered because it's the district court's order or judgment confirming the arbitration award which makes it a court judgment that can be enforced. And that's effectively what happened with respect to that. Secondly, with respect to the minor children, I think a couple of points to make. The district court pointed out that, you know, in dealing with the trustee removal issue, there was no accounting issue whatsoever that was being dealt with. And the district court believed that under those circumstances, and the case law seems to support it, that there's not a requirement to join the minor children of Mr. Brown as indispensable parties in order to permit the relief that was being sought by Brown-Thill. Secondly, we cited some cases in our briefing with respect to this doctrine that's been represented in a number of Missouri cases where you have a virtual representation situation where the interests of Mr. Brown and his minor children are aligned and he effectively represented their interests in connection with the trustee removal claim that was part of the arbitration proceeding that was heard on December 5, 2011. If the court does not have any other questions, I will sit down. Thank you. Thank you very much.